**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 5 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DERYL WAYNE COOK,

Petitioner-Appellant,

v.

RONALD J. CHAMPION, Warden,
Dick Connor Correctional Institution;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA, sued as:
Drew Edmondson,

Respondents-Appellees.

No. 98-5130

(D.C. No. 96-CV-757)
(N.D. Okla.)

**ORDER AND JUDGMENT** *

Before **ANDERSON, KELLY** and **BRISCOE,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Deryl Wayne Cook appeals the district court's denial of his 28

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

U.S.C. § 2254 petition for habeas relief and denial of his application for a certificate of appealability. We grant in part and deny in part Cook's request for a certificate of appealability and affirm the ruling of the district court.

In 1991, Cook was convicted in Oklahoma of two counts of indecent exposure after prior conviction of two or more felonies. He was sentenced to twenty-five and thirty years' imprisonment, to be served consecutively. The Oklahoma Court of Criminal Appeals affirmed his conviction on direct appeal in a summary opinion and denied his subsequent application for post-conviction relief.

On appeal, Cook raises two issues: (1) Introduction of hearsay testimony violated his right to confront the witnesses against him; and (2) use of a "presumed not guilty" rather than a "presumed innocent" jury instruction violated his right to due process. We conclude that with respect to his Confrontation Clause claim Cook "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and we grant a certificate of appealability on that issue. We deny Cook's request for a certificate of appealability with respect to his jury instruction claim and dismiss that portion of the appeal.

Because Cook filed his petition on August 16, 1996, our review is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996.

See Lindh v. Murphy, 117 S. Ct. 2059, 2064 (1997). Under that Act, Cook is entitled to relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Any factual findings made by the state court are presumed correct and will be disturbed only if shown to be erroneous by clear and convincing evidence. 28 U.S.C. § 2254(e).

## I. Confrontation Clause

Cook's Confrontation Clause claim has two components. First, he asserts his confrontation rights were violated by admission at trial of hearsay evidence that an eyewitness reported Cook's license plate number to police. Second, he argues his confrontation rights were violated by a police officer's testimony that the victims had picked Cook from a photographic lineup.

Despite the asserted constitutional errors, much of Cook's appellate brief is devoted to analyzing the admissibility of the evidence under Oklahoma law. On federal habeas review, however, our remedial powers extend to correcting constitutional errors. On federal habeas review, we can afford no relief for simple errors of state law. See Tyler v. Nelson, 163 F.3d 1222, 1226 (10th Cir. 1999). Therefore, we consider Cook's contentions only to the extent they

-3-

implicate his constitutional rights.

The charges against Cook stemmed from incidents that occurred on September 5 and 8, 1991. On those days, as well as on September 7, a man on a "shiny black" motorcycle rode by the home of ten-year-old Y and her parents. On September 5 and September 7, Y was outside her house when the man rode by on his motorcycle and, according to Y, the man exposed his genitals. Y was only seven feet from the street when she saw the man. She did not report the September 5 incident to her parents until the man again exposed himself on September 7. Y described the man as an "old man, bald headed with glasses," riding a black motorcycle. In a subsequent conversation with police, Y stated the motorcycle's license plate included the number 718.

Y's mother saw the man expose himself on September 8. The mother was standing outside with Y's father and a neighbor when a man rode by on a motorcycle. As Y ran from the house, she saw the man and exclaimed, "That's him, that's him." Tr. 16, 33. The mother testified the man "had his zipper down with his genitals out" and tried "to cover up" when he saw adults standing in the yard. Id. at 33. Y's father got into his car and chased the man, apparently recording the license plate number on the motorcycle as Y9797.

The license plate number led police to Cook, who had four prior convictions for indecent exposure. However, Y's father, who was the only person

-4-

who saw and recorded the Y9797 license plate number, did not testify at trial. Instead, police officers testified over Cook's hearsay objections that the suspect reportedly was riding a motorcycle with license plate number Y9797. The prosecutor referenced the license plate identification in both opening statement and closing argument. Over Cook's objection, one of the officers also testified that the victims picked Cook's photograph from a photographic lineup.

Cook argues admission of testimony regarding the license plate number and the photographic lineup violated his rights under the Due Process and Confrontation Clauses. In considering Cook's claim, we need not determine if the evidence was admissible under Oklahoma rules of evidence. Rather, we ask only whether the admitted evidence violated Cook's Sixth Amendment right to confront adverse witnesses. "For the admission of hearsay evidence to comply with the Sixth Amendment, the witness must be unavailable and the statement must bear 'sufficient indicia of reliability.'" Hatch v. Oklahoma, 58 F.3d 1447, 1467 (10th Cir. 1995) (quoting Ohio v. Roberts, 448 U.S. 56, 65-66 (1980)). A statement is reliable if it "falls within a firmly rooted hearsay exception" or is accompanied by "particularized guarantees of trustworthiness." Roberts, 448 U.S. at 66.

The hearsay evidence admitted here satisfies neither of the Roberts requirements. There is no indication in the record that Y's father, who recorded

the license plate number, was unavailable to testify at trial and the state offers no explanation for this witness' absence. Further, the statements at issue do not fall within a firmly rooted hearsay exception or appear to be particularly trustworthy. The state does assert that evidence of the license plate was admissible as non-hearsay because it was offered not for the truth of the matter asserted, but only to explain the officers' subsequent conduct in investigating Cook. Regardless of the purpose for which the evidence was admitted, however, it is apparent from the record that the prosecutor, over Cook's objections, used the evidence in both opening statement and closing argument for the sole purpose of proving Cook's guilt. Therefore, like the district court, we will assume admission of the evidence violated Cook's confrontation rights.

Despite this violation of Cook's constitutional rights, he is entitled to habeas relief only if the trial error is not harmless. See Crespin v. New Mexico, 144 F.3d 641, 649 (10th Cir. 1998) (violation of Confrontation Clause is trial error subject to harmless error analysis). In habeas proceedings, an error is harmless only if it did not have "substantial and injurious effect or influence in determining the jury's verdict." [1] Brecht v. Abrahamson, 507 U.S. 619, 622

---

[1] Because the Oklahoma Court of Criminal Appeals decided the issue in summary fashion, it is unclear whether it applied any type of harmless error review, or even concluded admission of the evidence violated Cook's confrontation rights.

(1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). If we are in "grave doubt" about the harmlessness of the error, we must treat the error as though it affected the verdict. See O'Neal v. McAninch, 513 U.S. 432, 435 (1995). "Grave doubt" exists if "the matter is so evenly balanced that . . . [we are] in virtual equipoise as to the harmlessness of the error." Id. In conducting a harmless error analysis, our task is not to determine whether the evidence is sufficient to support Cook's convictions in the absence of the inadmissible hearsay. See Tuttle v. Utah, 57 F.3d 879, 884 (10th Cir. 1995). Instead, "we must determine, in light of the entire record, whether [the hearsay] evidence so influenced the jury that we cannot conclude that it did not substantially affect the verdict, or whether we have grave doubt as to the harmlessness of the errors alleged." Id.

In Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986), the Supreme Court set forth several factors that typically prove helpful in determining whether a Confrontation Clause violation is harmless:

> Whether such an error is harmless in a particular case depends upon a host of factors, . . . includ[ing] the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Id. Applying these factors to the instant case, we conclude any Confrontation

Clause violations were harmless.

The license plate evidence at best linked Cook's motorcycle with the perpetrator. While this direct link was not unimportant, it was not critical in light of the independent eyewitness identifications of Cook by Y and her mother. The hearsay evidence was cumulative and unnecessary to the extent it was used to place Cook at the crime scene. See Crespin, 144 F.3d at 650 (error harmless where evidence not required to place defendant in store at time of robbery). At trial, Y identified Cook as the man who drove by her house and exposed himself on September 5 and 7. Although she was only ten years old when the incident occurred and eleven years old at the time of trial, Y did not retreat from her positive identification of Cook. Her mother was equally adamant in her identification of Cook.

Some facts do weigh against a finding of harmlessness with respect to the license plate evidence. Foremost among them is Y's testimony that she initially thought the license plate included the number 718. At trial, Y explained the discrepancy by admitting her initial recollection must have been wrong. Also weighing against a finding of harmlessness is the prosecutor's reference to the license plate number in opening statement and closing argument. These references were brief, but forceful. In the prosecutor's extremely short opening statement, which consisted of one transcribed page in the trial record, he informed

the jury that "[t]he big difference between the incident on the 5th and the incident on the 8th was that somebody on the 8th got a vehicle description and a license plate number. That information was used by police officers and detectives to find this man, Deryl Wayne Cook." Tr. at 5. In closing argument, the prosecutor specifically implored the jury to "look at the license plate number." Id. at 100.

Although troubling, these facts must be viewed in light of the strength of the prosecution's case. Here, that case was not based on circumstantial evidence, see Tuttle, 57 F.3d at 892, but on two positive eyewitness identifications of Cook as the perpetrator. Cf. Graham v. Wilson, 828 F.2d 656, 661 (10th Cir. 1987) (numerous eyewitness identifications rendered error harmless). In light of the significant strength of the prosecution's case against Cook, the erroneous admission of the license plate evidence and the resulting constitutional error did not substantially and injuriously affect the jury's verdict.

Admission of the officer's testimony regarding the photographic lineup, which Cook does not suggest was impermissibly suggestive or otherwise improper, also was harmless. At trial, both Y and her mother identified Cook. As such, even if improperly admitted, the evidence was relatively unimportant to the prosecution's case and was cumulative. Moreover, Y, her mother, and the officer who arranged the lineup were all available at trial and subject to cross-examination. We conclude the officer's testimony that Y and her mother picked

Cook's picture from a photographic lineup did not substantially affect the jury's verdict.

## II. Jury instruction

Cook contends he was deprived of a fair trial when the state district court instructed the jury not that Cook was presumed innocent but that he was presumed not guilty. Cook's trial counsel did not object to the "presumed not guilty" instruction at trial and appellate counsel did not raise the issue on appeal. Instead, Cook raised the issue in his post-conviction application after the Oklahoma Court of Criminal Appeals issued its opinion in Flores v. State, 896 P.2d 558, 562 (Okla. Crim. App. 1995). In Flores, the court ruled use of the "presumed not guilty" instruction constituted reversible error. In this case, the court ruled Cook waived the issue by not presenting it on direct review.

An issue that is procedurally defaulted in state court on an adequate and independent state law ground may not form the basis of a habeas petition unless the petitioner establishes cause and prejudice to excuse the procedural default or demonstrates that failure to consider the claim would constitute a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Rogers v. Gibson, 173 F.3d 1278, 1290 (10th Cir. 1999). Cook does not dispute that Oklahoma's waiver rule constitutes an adequate and independent state law ground that we must respect. Instead, he asserts ineffective assistance of counsel

excuses his procedural default. Although ineffective assistance of counsel may serve as "cause" sufficient to overcome a procedural bar, see Ross v. Ward, 165 F.3d 793, 798 (10th Cir. 1999), Cook simply asserts without comment that his trial and appellate counsel were ineffective. Nowhere does he offer any substantive explanation of how he was prejudiced by the "presumed not guilty" instruction.

Cook cannot demonstrate deficient performance by his counsel in any event. Flores was decided after Cook's trial and direct appeal were complete. Cook's attorney did not have the benefit of Flores or any other case law casting doubt on the propriety of the "presumed not guilty" instruction. Counsel is not ineffective for failing to anticipate arguments on issues that had no basis in law at the time of trial or appeal. See Sherill v. Hargett, 1999 WL 492682 (10th Cir. 1999) (rejecting same contention presented by Cook).

### III. Conclusion

We GRANT Cook a certificate of appealability with respect to his Confrontation Clause claim and AFFIRM the district court's ruling denying Cook habeas relief. We DENY Cook a certificate of appealability with respect to his due process claim and DISMISS that portion of his appeal. The mandate shall issue forthwith.

Entered for the Court

-11-

MARY BECK BRISCOE
Circuit Judge